Alexander v. Parker.

---

## SUSAN T. ALEXANDER ET AL.

### v.

## LAURA A. PARKER.

*Life Insurance—Benevolent Associations—Royal Arcanum—By-laws of—Dependent Person—Affianced Wife.*

1. In chancery proceedings where the evidence is heard by, and submitted to the chancellor, it is presumed that he will give weight and consideration only to competent and proper evidence. In such cases, if it appears to an appellate court that improper evidence was admitted, the presumption is that the chancellor rejected it from consideration. Its admission is, at most, a harmless error, and a decree will not for that reason be reversed, if there is sufficient legitimate evidence in the record to support it.

2. The laws, rules and regulations of benevolent associations are to be given a reasonable and liberal construction, and one that, so far as it may be consistently done, will advance the generous and beneficent ends and designs of the association.

3. Where a fund would, in a certain case, come to the children of assured, as beneficiaries, they can not be said to be prosecuting or defending as heirs, their right to such fund being contested by another, and such other is a competent witness in his own behalf.

4. Where a party, a widow, claims such fund as a dependent, evidence showing that she received no property from her husband's estate is admissible, he not having been the person insured.

5. The letters of deceased to such person are admissible in such case, they tending to establish dependency.

6. The wish and desire of such deceased member ought to be observed and carried out. It ought not to be defeated by strict and technical interpretation or definition of a given word. Such word ought to be given a meaning that will not defeat the intention of deceased, if such meaning be not inconsistent with the use made of it in the statutes of the State in which the association was organized, and in the constitution and laws thereof. The design and purpose of such statutes, and the objects and aims of the association and of the deceased member must be kept in view, and the word given an interpretation that is in harmony therewith, and one that will advance these purposes and designs, if it be reasonably possible to do so.

7. In order to be deemed a dependent, it need not appear that such person has no other possible means of support. That deceased furnished some assistance is enough.

8. In the case presented, this court holds that an affianced wife must be looked upon as a dependent within the terms of the contract of insurance.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Messrs. CARTER, GOVERT & PAPE, for appellants.

A corporation which is created under a general law derives its powers from the same and they can not be extended beyond such as are specified in the statute. Cook on Stock and Stockholders, Sec. 3, and cases cited in note. People v. Chicago Gas Trust Co., 130 Ill. 268, and cases there cited.

This principle applies to mutual benevolent societies and consequently they can not provide or contract that a mortuary benefit fund may be made payable to any class of persons other than such as are enumerated in the statute under which they have been organized. Palmer v. Welch, 132 Ill. 141; S. C., 33 N. E. Rep. 412; Parke v. Welch, 33 Ill. App. 188; American Legion of Honor v. Perry, 140 Mass. 580; Ameri-

Alexander v. Parker.

can Legion of Honor v. Smith, 45 N. J. Eq. 466; Lyon v. Rolfe, 76 Mich. 146; National Mutual Aid Association v. Gouser, 43 Ohio, 1; Hellenberg v. Independent Order, etc., 94 N. T. 58; Skillings v. Massachusetts Benevolent Association, 146 Mass. 217; Tyler v. Odd Fellows Mutual Relief Association, 145 Mass. 134; Daniels v. Pratt, 143 Mass. 216; Elsey v. Odd Fellows Mutual Relief Association, 142 Mass. 224; Britton v. Supreme Council of the Royal Arcanum, 46 N. J. Eq.; S. C., 18 At. Rep. 675.

Consequently if a member of such an association designates as his beneficiary a person who does not belong to any of the classes mentioned in the statute, and if the association issues a benefit certificate to such person, the designation is, nevertheless, invalid, and the effect is the same as if no beneficiary had been named. The benefit fund in such cases is payable to the persons to whom it would have gone if no attempt had been made to designate a beneficiary. Palmer v. Welch, 132 Ill. 141; S. C., 23 N. E. Rep. 412.

The statute of Massachusetts under which the Supreme Council of the Royal Arcanum was organized, provided that the mortuary benefit might be made payable to "widows, orphans or other relatives of deceased members, or persons dependent upon deceased members." Appellee in this case does not come within any of these classes. An affianced wife of a member is not, as such, a dependent upon him. Palmer v. Welch, 132 Ill. 141; S. C., 23 N. E. Rep. 412; Parke v. Welch, 33 Ill. App. 188; American Legion of Honor v. Perry, 140 Mass. 580.

The Supreme Council of the Royal Arcanum in its articles of association did not create the mortuary fund for the benefit of all of the classes mentioned in the statute, but only for the benefit of "widows and orphans." It can not, therefore, be paid to any one but widows and orphans of members. Lyon v. Rolfe, 76 Mich. 146; Brittan v. Supreme Council of the Royal Arcanum, 46 N. J. Eq.; S. C., 18 At. Rep. 675.

Mr. GEORGE W. FOGG, for appellee.

We come to their fifth and last point, which is as follows, viz.:

The Supreme Council of the Royal Arcanum in its Articles of Association did not create the mortuary fund for the benefit of all the classes mentioned in the statute, but only for the benefit of "widows and orphans." It can not, therefore, be paid to any one but widows and orphans of members.

Now were the premises of this proposition true, there can be no doubt but that the conclusion above stated would be a logical sequence; but is it true, as stated, that the mortuary fund was created and exists only for the benefit and payment of "widows and orphans?" We answer, it is not so. There is but one fund provided for the payment of relatives and dependents. Both classes of claimants or beneficiaries are coupled together in the statutes of Massachusetts, and in the laws of the order, and wherever the fund or payments are spoken of there is no distinction or exception as to the fund out of which either class of beneficiaries is to be paid. The assessments are made for the payment alike of both classes of beneficiaries, and there is but a single fund known as provided by law; and it is provided for their indiscriminate payment. In support of this view, see Sec. 8, Chap. 115, of the Massachusetts General Statutes, and Sec. 21, Chap. 195, Acts of 1882, amendatory of said Sec. 8, *ante* page; also Book of Laws of the Order, Laws I and III, commencing at pages 25 and 32, respectively, to be found at record page 140. Besides which, see the decisions of courts of Massachusetts and this State, wherein the Massachusetts statutes and the laws of this order have been passed upon and construed, in all of which a doctrine contrary to that contended for by counsel will appear. See Palmer v. Welch, 132 Ill. 141; Supreme Council Legion of Honor v. Perry, 140 Mass. 180; Daniels v. Pratt, 143 Mass. 216; Elsey v. Odd Fellows, etc., Ass'n, 142 Mass. 224; Marsh v. Legion of Honor, 21 N. E. R. 1070; Mich. Mut. Ben. Ass'n v. Rolfe, 76 Mich. 146; and Brittan v. Supreme C. R. A., 46 N. J. Eq. and 18 At. Rep. 675. The two cases last cited are those cited by appellants in support of their fifth point, and are directly contrary to their contention, the rule sought to be sustained by them, and here cited, being directly contrary to their fifth and last point. The attention of the court is especially directed to these last two cases.

This disposes of appellants' brief so far as we have occasion to deal with it.

We now come to the consideration of what we deem to be the only debatable question in the case. Was appellee a "dependent person" within the true meaning and intent of the laws of this order? This is a mixed question of law and fact. Following are some authorities bearing upon the question:

Dependent, *a.* [*L. dependens.*] * * * 3. Having dependence; *deriving support from;* relying upon for the means of subsistence; as "*Dependent* on charity."

Dependency, *n.* [*L. dependes, dependens.*] * * * 3. The estate of deriving support from; reliance on or upon; trust on or upon; confidence in or upon.

The expectation of the performance of our desire is that we call *dependence upon* him. Stillingfleet.—Worcester's Quarto Dic.

Dependent. Inability to sustain one's self without aid; relying upon one for support or favor; as one who is sustained by another, or who relies on another for support or favor; not able to subsist, or to perform a given thing without the aid of another. Children are dependent upon their parents for food and clothing; the pupil is dependent on his preceptor for instruction. *One who has the right* to rely upon another.

Dependency. The state or condition of reliance upon another, *in whole or in part,* for personal maintenance or support.—Webster's Quarto Dic.

Dependent. "Relying on for support."—5 American and English Encyc. of Law, 569.

A person who is dependent for support upon another.—Anderson's L. Dic. 343.

Citing, Ballou v. Gile, *post;* and Am. Legion of Honor v. Perry, 140 Mass. 580.

In considering a very similar case the Supreme Court of Wisconsin says: "We think the true meaning of the word 'dependent,' in this connection, means some person or persons dependent for support in some way upon the deceased. Dependency means to be dependent on another for support, in

some manner, and in some degree or to some extent." Ballou
v. Gile, 50 Wis. 614.

And for a full and complete discussion of the question of the
import of the term, when used as in the case at bar, see Ba-
con's Benefit Societies, 393, 394, and the numerous cases there
cited.

BOGGS, J. The general statutes of the State of Massachu-
setts provide for the incorporation of associations for chari-
table, educational and benevolent purposes, and empower any
such association when incorporated, to provide by its by-laws
for the payment by each member to the association of a fixed
sum to create a fund for the purpose of assisting the widow,
orphans or other relatives of deceased members or any person
dependent upon the deceased members. The Supreme Coun-
cil of the Royal Arcanum became incorporated under these
statutes. The certificate of its incorporation recites that the
council was formed for the purpose of fraternal union, aid to
its members and their dependents. Its constitution declares
that one of the objects of the order is, " To give all moral
and material aid in its power to its members and those depend-
ent upon them."

Sec. 1 of Law 3 of its Book of Laws provides for the issu-
ance of benefit certificates to its members, and the second sec-
tion of the same law designates two classes of persons to whom
such benefits may be made payable, viz.:

Class first. To a member's wife, children, grandchildren,
father, mother, grandparents, brother or sister, in either of
which cases no proof of dependency shall be required before
the issuing of the benefit certificate.

Class second. To any other person who is dependent upon
the members for maintenance (food, clothing, lodging or edu-
cation), in which case written evidence of the dependency,
within the requirements of the laws of this order, must be
furnished to the satisfaction of the supreme secretary before
the benefit certificate can be issued.

Sec. 6 of Law 3 has reference to the rights of both of these
classes of persons and it is as follows:

" No benefit shall be made payable to any person or persons
of the second class, mentioned in paragraph two of this section,
unless the dependency therein required to be shown exists at the
time of the member's death, in which case proof of such de-
pendency at the member's death shall be furnished in writing
to the satisfaction of the supreme regent before the payment
of the benefit shall be made.    If at the time of the death of such
member, the dependency herein required shall have ceased, or
shall be found not to have existed, or if the designation shall
fail for illegality or otherwise, then the benefit shall be pay-
able to the person or persons mentioned in class first, para-
graph two of this section, if living, in the order of the prece-
dence as therein enumerated.    If no one of said class shall be
living at the death of the member, the benefit shall revert to
the widows and orphans' benefit fund."

On the 15th of June, 1883, Edwin H. Turner, Sr., then a resi-
dent of Quincy, Illinois, became a member of the Royal Arca-
num and received a benefit certificate of the order, binding it
to pay out of its benefit fund, at the time of his death, the sum
of $3,000 to Mrs. Laura A. Parker ("affianced wife").

Edwin H. Turner, Sr., died October, 1888, leaving this ben-
fit certificate in full force.    He left surviving him no widow,
and the appellants are his only children and next of kin.    The
fund to be paid under the benefit certificate was claimed by
the appellants and also by Laura A. Parker, the appellee.

The Royal Arcanum, admitting a liability to pay to one or
the other of the claimants, by a bill in chancery properly framed
for that purpose, required them to interplead in the Circuit
Court of Adams County, into which court the society prayed
leave to pay the money, to be awarded to the persons entitled
to receive it.

Upon a hearing of such interpleaders the fund was awarded
to Laura A. Parker and this appeal is brought to reverse such
decree and award of the Circuit Court.

It is first assigned for error that the appellee was allowed
to testify in her own behalf.    Appellants insist that she was
not a competent witness as to occurrences before the death of
Edwin H. Turner, Sr., because they are, as they contend, pros-

APPELLATE COURTS OF ILLINOIS.

VOL. 42.] Alexander v. Parker.

ecuting their claim to the fund and defending against her claim thereto as the heirs of their father.

The fund upon the face of the certificate is payable to the appellee, as the "affianced wife" of Turner.

Funds raised by the Royal Arcanum can, however, only be paid to persons of one or the other classes designated by the statutes of the State creating the society, and an "affianced wife" is not included in either class.

The appellee can not, therefore, take from the fund by reason of the provision in the certificate making it payable to her as "affianced wife." She may, however, receive the fund if she was, within the meaning of such statute, dependent upon the deceased member. The appellants deny that such dependency existed, and assert that in the absence of such a dependency the fund vests in them as the heirs of the deceased, and that therefore they are heirs defending as against her claim to the fund and prosecuting a claim of their own as heirs.

Sec. 6 of Law 3 of the Book of Laws of the Arcanum provides that if the requisite dependency does not exist, the fund shall be paid to the persons mentioned in the first class of beneficiaries in the order of precedence therein mentioned.

This order of precedence is : 1, member's wife; 2, children; 3, grandchildren; 4, father; 5, mother; 6, grandparents; 7, brother or sister.

If no state of dependency is found to exist in the beneficiary named, then under the operation of this law of the Arcanum the member's wife would take the fund to the exclusion of all other relatives—not as an heir of the deceased, but purely by the operation of the rules and regulations of the society. If there be no dependent beneficiary and no wife, then the fund goes by the same rules and regulations not to the heirs of the deceased member but to his children.

It would come to them not as an inheritance from the father, nor to them as heirs, but as a class of beneficiaries under the laws of the society. The laws of descent and inheritance would not so cast the fund, for grandchildren who are heirs at law are not beneficiaries under the rules and regulations controlling this fund, except there be no wife or children to

take.   Therefore it can not be said that the appellants are prosecuting or defending as heirs; hence the appellee was a competent witness in her own behalf.

Complaint is made of the ruling of the court permitting the appellee to testify that her husband left no property when he died, and in permitting her to state, as a total, the average amount contributed to her by the deceased member from 1883 to his death, and that such contributions were necessary for her support, and also in refusing to require appellee to answer as to whether or not her sisters, whom she said were also living with her mother, were employed and earning wages, and also in refusing to require her to state whether she paid her mother more for her board than her sisters paid.   It is also complained that the court allowed Mrs. Lee, a sister of and witness for appellee, to testify that the appellee was " dependent," and in refusing to strike such testimony from the record.

One of the issues to be determined from the evidence was the alleged dependency of the appellee.

Whether she was possessed of property or not was an important matter of inquiry.   No reason is apparent to us why she might not properly state that she received no property from the estate of her deceased husband, as a fact tending to show her need of assistance.

It is well, before considering further the alleged errors of the court in its ruling concerning the admissibility of testimony, to note that in chancery proceedings where the evidence is heard by, and submitted to the chancellor, it will be presumed that the chancellor will give weight and consideration only to competent and proper evidence.   In such cases, if it appears to an appellate court that improper evidence was admitted, the presumption is that the chancellor rejected it from consideration.   Its admission, therefore, is at most a harmless error, and a decree will not for that reason be reversed if there is sufficient legitimate evidence in the record to support it. Hughes v. Frisby, 81 Ill. 188.

It is true that the appellee was permitted, over the objection of the appellants, to state that the deceased, Edwin H. Turner, Sr., had contributed to her in clothing and money and val-

nables from the time of their engagement to be married until his death, about $150 annually. The ruling of the court was that he would hear her so state the amount, and that the appellants upon cross-examination would be allowed to bring out the facts in detail. Upon cross-examination the ample opportunity was so given and was fully availed of by counsel for appellants.

The court had, therefore, not only the opinion of the appellee as to the annual gross amount received, but had her statement in detail, and it is, as we before said, presumed that the court rejected all the evidence that was improper and considered and gave weight only to legitimate evidence.

And it is here proper to say as falling within the same principle, that no reversible error occurred in allowing Mrs. Lee, witness for complainant, to testify that appellee was " dependent." Mrs. Lee, upon examination in chief and upon cross-examination, stated facts tending to show the existence of a dependent condition of the appellee, and it is presumed that such facts alone were considered.

Whether the sisters of appellee were earning wages and therefore able to assist her and whether the appellee paid her mother a greater sum for her board than did her sisters were deemed by the court irrelevant. Such facts threw no light upon the question of whether the appellee was dependent upon the assured and they were properly excluded by the court.

Another assigned error is that the court "refused to consider and disregarded the testimony showing the insolvency of Edwin H. Turner, and that he had nothing after his failure in business with which to assist the appellee." The evidence offered by the appellants tending to show such insolvency, was heard by the court, and we do not know what warrant appellants have for saying it was disregarded and not considered.

The ruling of the court upon the question of the admissibility of such evidence was, " I will hear the testimony and disregard it if I think it is not proper," which is in full accord with the rule governing the admission of testimony in equity causes.

Eleven letters written by Edward H. Turner, Sr., to appel-

lee, were received in evidence over the objection of the appellants and in this, it is said, is error.    No reason in support of this assignment is advanced and we think there is none in its support.    The first of these letters is dated April 7, 1886, and the last one August 12, 1888, being within a few weeks of his death, and were all legitimate and competent as evidence for the appellee, tending strongly to establish the existence of her dependent condition upon him and his recognition thereof.

The only remaining assignment of error is that the court erred in finding and holding from the evidence that the appellee was dependent upon Edwin H. Turner, the deceased.    It is conceded that in order to recover the fund she must have been so dependent on the 15th day of June, 1883, when the policy was issued, and on the 2d day of October, 1888, which was the day of his death.

It is obvious that the determination of this question must be largely governed by the meaning that is given the word "dependent."

A mere definition of it is easily obtained, but one that will fully express all of its meaning and can be accepted as entirely comprehensive and satisfactory can be found only with great difficulty, if at all.    Nor is it clear that the rights of the parties can be made to rest upon any mere definition.    All will agree that the wish and desire of the deceased member ought to be observed and carried out.    It ought not to be defeated by strict and technical interpretation or definition of a word. The word ought to be given a meaning that will not defeat the intention of the deceased if such meaning be not inconsistent with the use made of it in the statutes of the State of Massachusetts, and in the constitution and Book of Laws of the Royal Arcanum.

The design and purpose of such statutes, and the objects and aims of the organization and of the deceased member must be kept in view, and the word given an interpretation that is in harmony therewith, and one that will advance these purposes and designs if it be reasonably possible to do so.

This statute authorized the formation of incorporated associations for the purpose of "assisting the widows and orphans or other persons dependent on a deceased member." It is clear that this is broad enough to authorize an incorporation formed under it to assist persons, not the kindred of a member, if such person be dependent upon a member. It is dependency, not relationship, that controls. The constitution of the Royal Arcanum and its Book of Laws declare the purpose and powers of the organization, as does the statute, except that in the Book of Laws the purpose is more fully expressed to the following classes of persons: * * * Class second. To any other person who is dependent upon a member for maintenance (food, clothing, lodging or education). Par. 2, Sec. 2, Law 3, Book of Laws.

In the view of counsel for the appellants this " dependency for maintenance" must be total and absolute; that is, that to be deemed dependent it must appear that there was no other possible means of support; that no relatives could assist and that an absolute condition of helplessness existed, to be relieved only and solely by deceased member.

To this we can not assent. Such a construction is too narrow and illiberal and can not be made to accord with the generous and beneficent purposes of the association. Nor can it be harmonized with the plain reading and unquestioned meaning of Par. 2, which we have quoted from the laws of the association.

The words, food, lodging, clothing or education, could only have been inserted in that paragraph for the purpose of expressly and clearly showing that the benefits of the order were not to be limited to persons dependent in whole upon a member for maintenance. By the employment of these words it is made clear that the benefits of the funds are intended for the assistance of any one who was dependent upon a member for either food or clothing or lodging or education, though not dependent in whole for maintenance.

And in determining as to the existence of a dependency for either of these necessaries or comforts of life we are to apply the same broad and liberal rules of construction. A depend-

ency for either food, clothing, lodging or education to be sufficient to uphold the right to receive assistance from the fund in question need not be a total and absolute dependency for either of these things. It need not appear that the intended beneficiary had no other possible means of obtaining food or clothing or lodging or education.

That they or either of them were furnished by the member and he was depended upon to furnish them in whole or in part is sufficient. Bacon on Benevolent Societies, Sec. 261.

The laws, rules and regulations of benevolent associations are to be given a reasonable and liberal construction, and one that, so far as it may be consistently done, will advance the generous and beneficent ends and designs of the association. Any other rule of construction would be illogical, unreasonable and wholly unjustifiable, and would serve to destroy that which ought to be assisted and protected.

If a forfeiture of a right to share in the benefits of such an order is involved, then the strict and narrow construction contended for by the appellants would be adopted as against a forfeiture, so that the right may be saved; but broad and liberal interpretation should be indulged in to effectuate the wish of the member and the purpose of the association. The adjudication of courts ought, if possible, advance and conserve the efforts of all associations which have life and existence solely for benevolent reasons and purposes. Bacon on Benevolent Societies, Secs. 247 and 255; May on Insurance, Secs. 174–175.

Applying these views to the case at bar, it seems clear that the appellee is to be deemed as "dependent" upon the deceased if she was in some degree and to some extent dependent upon him for maintenance or for either food, lodging, clothing or education.

There is in our opinion legitimate evidence in this record, too voluminous to be recited, amply sufficient to sustain the finding of the court that such a state of dependency existed. It is shown that the appellee was a widowed woman without property, working for such wages as she could command, having her home with a widowed mother, to whom she paid for

boarding and lodging in such amounts and at such times as lay in her power. She became affianced in marriage to the deceased, who was in financial straits, and at his request the marriage was delayed until he could provide for her a home and the comforts of life as his wife. She was in need of assistance, known to be so to him, was assisted by him, by her mother and her married sisters. He knew of her wants and recognized it as his duty to aid her. He bought a cloak, dresses, a bonnet, perhaps other articles of clothing for her, gave her money as he could spare it and made her presents of perfumery and other like articles. He procured this insurance to assist her in case his death should deprive her of further aid from him. The payment of the premiums was regarded by him as a most desirable way of assisting her and he so expressed himself in his letters. To better his condition he moved to Kansas; while there he wrote her letters regularly, inclosing money in some of them, and expressing in each of them his full sense of her dependency upon him and his regrets that he was not able to do more for her. Affianced to him, she was struggling along until he felt himself able to make her his wife. He knew her wants, recognized her dependency upon him as his affianced wife, and contributed to her assistance as his means would allow.

The letters to her, written by him while in Kansas, show that he desired to do more for her than he found himself able to do, and that he felt her comfort and welfare depended upon him as though they were actually husband and wife.

There is in these letters no intimation of impurity or impropriety, nor does there arise in the evidence any suspicion that the relations between them were or ever had been improper or impure. He evinces for her the fullest respect and affection and seemed moved with the greatest concern for her comfort and well being.

The Circuit Court was in our opinion fully warranted in awarding the fund to her. The decree must be affirmed.

*Decree affirmed.*